[No. D026693. Fourth Dist., Div. One. June 24, 1998.]

MARYLAND CASUALTY COMPANY et al., Cross-complainants and Appellants, v.
NATIONWIDE INSURANCE COMPANY, Cross-defendant and Respondent.

**COUNSEL**

Lewis, D'Amato, Brisbois & Brisgaard, Robert V. Closson, Terrell A. Quealy, Branson, Fitzgerald & Howard, Harry A. Griffith and John H. Podesta for Cross-complainants and Appellants.

Daniels, Baratta & Fine, James M. Baratta, Mark R. Israel and Craig A. Laidig for Cross-defendant and Respondent.

**OPINION**

**HALLER, J.**—A general contractor is added to a subcontractor's commercial general liability insurance policy as an additional named insured. The additional insured endorsement states the insurance "applies only to the extent" the contractor is "held liable" for the subcontractor's acts or omissions. Under this endorsement, does the insurer have a duty to defend the general contractor for a potentially covered claim? Based on the policy language and the principles governing insurance policy interpretation, we conclude the policy imposes a duty to defend and reject the argument the endorsement eliminates this defense obligation.

This is an appeal from a summary judgment entered in favor of Nationwide Insurance Company (Nationwide). The trial court found National

Union Fire Insurance Company of Pittsburgh, American International Surplus Lines Insurance Company, and Maryland Casualty Company[1] were not entitled to contribution from Nationwide for defense costs expended in an underlying construction defect action. The court agreed with Nationwide's contention that its policy language was unambiguous and did not impose a duty to defend. Appellants dispute Nationwide's interpretation of the policy and assert a duty to defend existed. We agree and reverse.

Factual and Procedural Background

Nielsen Construction Company (Nielsen) served as the general contractor on a construction project. Nielsen was a named insured under general liability policies issued by appellants. Nielsen hired numerous subcontractors to construct portions of the project, including West Coast Sheet Metal, Inc. (West Coast) and R.W. Strang Mechanical, Inc. (Strang). The subcontract agreements required West Coast and Strang to name Nielsen "as Additional Named Insured and . . . provide specifically that such policies are primary and non-contributing with any other insurance carried or available to said Additional Named Insured."

West Coast and Strang were named insureds under commercial general liability policies issued by Nationwide. As required by the terms of the subcontract agreements, West Coast and Strang purchased "additional insured" endorsements (the endorsements) naming Nielsen an additional insured on the Nationwide policies.

In an underlying action, Nielsen was sued for construction defects at the project. Nielsen tendered defense of the underlying action to its own insurers (including appellants), as well as to Nationwide under the terms of the endorsements. Nationwide refused to provide a defense to Nielsen. Nielsen filed this action against Nationwide for failure to defend the underlying action.

Appellants, after being brought into this action by other parties, filed separate cross-complaints against Nationwide for declaratory relief, equitable subrogation and contribution/apportionment. Appellants sought reimbursement of costs expended for Nielsen's defense in the underlying action.

Nationwide moved for summary judgment against Nielsen on the ground it had no duty to defend Nielsen under the terms of the endorsements. The court granted the motion, finding the "plain unambiguous" language of the endorsements established no defense duty existed. The court found the

---

[1]We will refer collectively to these parties as appellants.

endorsements were "indemnity agreement[s]" with coverage for liability and defense costs conditioned on Nielsen first being "held liable" in the underlying action. Because the underlying action was still pending, the court concluded "the condition precedent has not occurred and no duty to indemnify has yet arisen."

Nationwide then moved for summary judgment on the cross-complaints filed against it by appellants. The court granted the motion finding the cross-complaints barred by the collateral estoppel doctrine because the claims arose from issues between Nationwide and Nielsen already adjudicated in Nationwide's favor.

## DISCUSSION

### I. *Standing*

Appellants sought reimbursement of costs expended for Nielsen's defense on alternate theories of equitable subrogation and equitable contribution. Focusing on the equitable subrogation theory, Nationwide contends appellants have no standing because an insurer's right to bring a subrogation claim requires that the insured had "an existing, assignable cause of action against the party to be charged . . . ." (*Patent Scaffolding Co.* v. *William Simpson Constr. Co.* (1967) 256 Cal.App.2d 506, 509 [64 Cal.Rptr. 187].) Nationwide says Nielsen no longer had an existing assignable claim because it "released" the claim when it failed to appeal the summary judgment granted in Nationwide's favor.

We disagree. Appellants' right to subrogation arose when they made defense payments on behalf of Nielsen. (See *Smith* v. *Parks Manor* (1987) 197 Cal.App.3d 872, 878-879 [243 Cal.Rptr. 256].) Nationwide knew of appellants' rights—as evidenced by these parties' cross-complaints—when the judgment was entered against Nielsen. Under these circumstances, Nielsen's subsequent failure to appeal the judgment did not impair appellants' potential right to equitable subrogation. (*Griffin* v. *Calistro* (1991) 229 Cal.App.3d 193, 196 [280 Cal.Rptr. 30].)

Moreover, even if the elements of equitable subrogation are not satisfied, appellants have standing to seek reimbursement based on an equitable contribution theory.

Contribution among insurers is permitted where one insurer pays a loss or defends a claim for which another insurer shares responsibility. (*Golden Eagle Ins. Co.* v. *Foremost Ins. Co.* (1993) 20 Cal.App.4th 1372, 1390 [25

Cal.Rptr.2d 242]; *Maryland Casualty Co. v. National American Ins. Co.* (1996) 48 Cal.App.4th 1822, 1828-1829 [56 Cal.Rptr.2d 498].) Where several insurers insure the same risk and are liable for any loss, the action between them is one for equitable contribution. (*Pylon, Inc. v. Olympic Ins. Co.* (1969) 271 Cal.App.2d 643, 648-649 [77 Cal.Rptr. 72].) An insurer seeking equitable contribution need only demonstrate another insurer covered the same risk and failed to pay its share of the loss. (See *United Pacific Ins. Co. v. Hanover Ins. Co.* (1990) 217 Cal.App.3d 925, 936 [266 Cal.Rptr. 231].)

Under these principles, appellants have standing to seek equitable contribution from Nationwide. Nielsen's failure to appeal does not preclude the equitable contribution claim. (See, e.g., *Maryland Casualty Co. v. National American Ins. Co., supra*, 48 Cal.App.4th at pp. 1828-1829 [insurer had standing to enforce defense duty owed to mutual insured where insured not party to appeal].)

## II. *Nationwide's Defense Obligation*

Appellants seek contribution for costs expended in defending Nielsen against claims potentially covered under Nationwide's policy. To recover on this claim, appellants must show Nationwide owed a duty to defend Nielsen. The court granted summary judgment, finding (1) Nationwide's policy did not impose a duty to defend Nielsen; and (2) although the policy may have imposed an obligation to *reimburse* Nielsen for defense costs, the obligation did not arise because it was subject to Nielsen being "held liable" for covered claims (a circumstance that had not yet occurred because the underlying action was still pending). Because we determine the policy imposed a duty to defend, we conclude summary judgment was improper.

### A. *Relevant Policy Provisions*

Nationwide issued commercial general liability insurance policies to West Coast and Strang. Section I of the policies lists the "coverages" provided and sets forth the insuring agreement. The insuring agreement for Coverage A, "Bodily Injury and Property Damage Liability," states in part: "We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies. We will have the right and duty to defend any 'suit' seeking those damages."

The Insuring Agreement defined the word "insured" as meaning:

". . . any person or organization qualifying as such under WHO IS AN INSURED (SECTION II)."

The additional insured endorsements to the West Coast and Strang policies stated:

"THIS ENDORSEMENT CHANGES THE POLICY, PLEASE READ IT CAREFULLY.

". . . . . . . . . . . . . . . . . . . . . . . . . . . .

"This endorsement modifies Insurance provided under the following: [¶] COMMERCIAL GENERAL LIABILITY COVERAGE PART.

"SCHEDULE [¶] Name of Person or Organization: [¶] NIELSEN CONSTRUCTION COMPANY

"WHO IS INSURED (Section II) is amended to include as an insured the Person or Organization in this Schedule, but this insurance with respect to such Person or Organization applies only to the extent that such Person or Organization is held liable for your acts or omissions arising out of and in the course of operations performed for such Person or Organization by you or your subcontractor."[2]

### B. *General Principles of Interpretation*

■ Insurance policies are contracts to which ordinary rules of contractual interpretation apply. (*Buss* v. *Superior Court* (1997) 16 Cal.4th 35, 44 [65 Cal.Rptr.2d 366, 939 P.2d 766]; *AIU Ins. Co.* v. *Superior Court* (1990) 51 Cal.3d 807, 822 [274 Cal.Rptr. 820, 799 P.2d 1253] (*AIU*).) The goal of contract interpretation is to give effect to the mutual intent of the parties. (Civ. Code, § 1636.) If contract language is clear and explicit, we ascertain this intent from the written provisions and go no further. (*AIU, supra,* 51 Cal.3d at p. 822.) Words in an insurance policy must be understood in their ordinary sense unless given special meanings by the policy. (*Waller* v. *Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 18 [44 Cal.Rptr.2d 370, 900 P.2d 619].)

■ A " 'policy provision is ambiguous when it is capable of two or more constructions both of which are reasonable.' " (*Bay Cities Paving & Grading, Inc.* v. *Lawyers' Mutual Ins. Co.* (1993) 5 Cal.4th 854, 867 [21 Cal.Rptr.2d 691, 855 P.2d 1263], italics omitted.) An ambiguity is resolved

---

[2] The West Coast endorsement also contained the following typewritten language in capitalized letters: "Coverage provided to the additional insured under this endorsement [i]s primary, but only with respect to acts or omissions of the named insured. Any other insurance maintained by the additional insured is deemed to be excess."

by interpreting the provision in the sense the promisor (i.e., the insurer) believed the promisee understood it at the time of contract formation. (*AIU, supra,* 51 Cal.3d at p. 822.) "This rule . . . protects not the subjective beliefs of the insurer but, rather, 'the objectively reasonable expectations of the insured.' " (*Bank of the West* v. *Superior Court* (1992) 2 Cal.4th 1254, 1265 [10 Cal.Rptr.2d 538, 833 P.2d 545].) If these rules do not eliminate the uncertainty, a court must construe the applicable language against the drafter who created the uncertain language. (*Ibid.*) Since endorsements are part of the insurance contract, the rules of interpretation apply equally to these provisions. (*Narver* v. *California State Life Ins. Co.* (1930) 211 Cal. 176, 181 [294 P. 393, 71 A.L.R. 1374].)

█ Where, as here, there is no conflicting extrinsic evidence, the interpretation of an insurance policy is a legal issue to be decided by the court. (*Parsons* v. *Bristol Development Co.* (1965) 62 Cal.2d 861, 865 [44 Cal.Rptr. 767, 402 P.2d 839]; *Masonite Corp.* v. *Great American Surplus Lines Ins. Co.* (1990) 224 Cal.App.3d 912, 916 [274 Cal.Rptr. 206].)[3]

### C.  *Analysis*

We start with the recognition that Nationwide's policy expressly includes a defense duty. The policy states Nationwide will pay "those sums that the *insured* becomes legally obligated to pay as damages . . ." and it has "*the . . . duty to defend any 'suit' seeking those damages.*" (Italics added.) The additional insured endorsement defines Nielsen as "an insured" within the meaning of this insuring clause. These provisions plainly require Nationwide to defend Nielsen.

█ Nationwide nonetheless argues, and the trial court agreed, the endorsement's limiting language rendered the policy's defense duty inapplicable to the additional insured and "unambiguously" established Nationwide had no duty to defend Nielsen. Focusing on the language, "this insurance . . . applies only to the extent that [Nielsen] is held liable for [the subcontractors'] acts or omissions . . . ," Nationwide maintains that the requirement that Nielsen be "held liable" establishes a condition precedent to Nationwide's obligations under the policy and therefore the policy did not impose a duty to defend Nielsen. Put otherwise, there was no defense obligation because Nielsen did not become an "insured" until it was "held liable" for the subcontractors' acts. Under this view, Nationwide has no

---

[3]Appellants presented the declaration of Jeff Platt, vice-president of Nielsen, expressing his thoughts regarding the meaning of the endorsements. This opinion evidence is not relevant to the interpretation of the endorsements. (See *Chatton* v. *National Union Fire Ins. Co.* (1992) 10 Cal.App.4th 846, 865 [13 Cal.Rptr.2d 318].)

obligation to pay for damages or to reimburse for defense costs until *after* Nielsen is "held" vicariously liable for the acts of the named subcontractors.

Appellants counter that while the endorsement language may limit the scope of the coverage obligation, there is nothing in the language eliminating the promised duty to defend. Under this view, the endorsement's statement that the insurance "applies only to the extent" Nielsen is "held liable" limits the coverage provided to Nielsen to situations where Nielsen is held vicariously liable for the acts of West Coast or Strang. The policy thus affords coverage where the subcontractor's negligence is attributed to Nielsen, but has no application where Nielsen's own alleged negligence is at issue. Appellants argue that since an insured must defend whenever there is a *potential* for coverage, the limiting language does not *eliminate* Nationwide's defense duty, but instead merely defines the *scope* of Nationwide's indemnity (and corresponding defense) obligations.

In determining whether either of the two interpretations are reasonable, we determine first whether the asserted constructions are "consistent with the insured's *objectively reasonable expectations.* [Citation.] In order to do this, the disputed policy language must be examined *in context* with regard to its intended function in the policy. [Citation.] This requires a consideration of the policy as a whole, the circumstances of the case . . . and 'common sense.' [Citation]." (*Nissel* v. *Certain Underwriters at Lloyd's of London* (1998) 62 Cal.App.4th 1103, 1111-1112 [73 Cal.Rptr.2d 174], original italics.) These rules apply in determining the existence of an ambiguity and in resolving the conflict once an apparent ambiguity has been identified. (*Id.* at p. 1112; see *Cooper Companies* v. *Transcontinental Ins. Co.* (1995) 31 Cal.App.4th 1094, 1106 [37 Cal.Rptr.2d 508].)

Under these principles, we adopt appellants' interpretation because it is supported by the policy language and comports with an insured's objectively reasonable expectations when viewing the endorsement in the context of the policy as a whole. Although Nationwide's position appears reasonable in the abstract, it is inconsistent with two fundamental rules of insurance law: (1) A liability policy is presumed to include a defense duty unless the duty is excluded by clear and unambiguous language; and (2) a defense duty is presumed to be broader than the duty to indemnify.

The insureds were reasonably entitled to expect the endorsement included the promised defense obligation because there was no language expressly excluding the duty. As our Supreme Court stated over 30 years ago, any limitations on a promised defense duty must be " 'conspicuous, plain and clear.' " (*Gray* v. *Zurich Insurance Co.* (1966) 65 Cal.2d 263, 273 [54

Cal.Rptr. 104, 419 P.2d 168]; see *Pacific Indemnity Co.* v. *Fireman's Fund Ins. Co.* (1985) 175 Cal.App.3d 1191, 1200 [223 Cal.Rptr. 312]; *Ohio Casualty Ins. Co.* v. *Hubbard* (1984) 162 Cal.App.3d 939, 948 [208 Cal.Rptr. 806].) Although *Gray* arose in the context of a defense duty owed to an originally named insured, its holding applies equally to an insured added by endorsement. Under Civil Code section 2778, subdivision 4, a defense obligation is implied in all indemnity agreements "unless a contrary intention appears." (Civ. Code, § 2778; see *Save Mart Supermarkets* v. *Underwriters* (N.D.Cal. 1994) 843 F.Supp. 597, 602; see also DiMugno & Glad, Cal. Insurance Law Handbook (1997) §§ 46.01, 46.18(25), pp. 785, 860.) ▆ Thus, a reasonable insured would be entitled to presume the defense duty applied to Nielsen unless the policy clearly provided otherwise. (See *Gray* v. *Zurich Insurance Co., supra,* 65 Cal.2d at p. 273; see also *Save Mart Supermarkets* v. *Underwriters, supra,* 843 F.Supp. at p. 602.)

The policy here did not provide otherwise. The additional insured endorsements made Nielsen an "insured" under policies that expressly imposed a defense duty. The endorsements did not expressly or implicitly limit this defense obligation. Nationwide argues the requirement that the insurance applies "only to the extent" Nielsen is "held liable" is a clear and unambiguous statement eliminating its duty to defend Nielsen. But it is just as reasonable to view this phrase as referring only to the scope of Nationwide's indemnity obligation and limiting this obligation to situations where Nielsen is held liable for the acts of the named insured. Since a defense duty is broader than an indemnification obligation, the limitation on the scope of coverage does not eliminate the defense duty, but instead merely forms the parameters for that duty. (See *Buss* v. *Superior Court, supra,* 16 Cal.4th at pp. 46-47 & fn. 10 ["the insurer's duty to defend is broader than its duty to indemnify" but both duties "are in fact dependent on coverage"—the indemnity duty on "actual coverage" and the defense duty "on at least potential coverage"].)

Because the endorsement language can be reasonably interpreted as limiting Nationwide's indemnity obligation to situations where Nielsen is held vicariously liable for the subcontractors' acts, we reject Nationwide's argument that the language "unambiguously" negated a defense duty because any other interpretation "would require that all of the limiting language of the endorsement be disregarded." ▆ This qualification on the extent of indemnification provided to a general contractor is consistent with the "well established meaning" of additional insured provisions: "[t]hey are intended to protect parties who are not named insureds from exposure to vicarious liability for acts of the named insured." (*Harbor Ins. Co.* v. *Lewis* (E.D.Penn. 1983) 562 F.Supp. 800, 803.) ▆ We find unpersuasive Nationwide's

argument the endorsement language is meaningful only if it is interpreted to exclude a defense duty.

Nationwide also argues the lack of a defense obligation was "unambiguous" because the endorsement used the phrase "held liable for" instead of providing coverage for liability "arising out of." While it is conceivable an insurance expert would find this distinction to be significant for purposes of determining the existence of a defense duty, there is nothing in the use of the "held liable" phrase that would meaningfully communicate this distinction to a layperson. ■ An insurance policy " 'should be read as a lay[person] would read it and not as it might be analyzed by an attorney or an insurance expert.' " (*De May* v. *Interinsurance Exchange* (1995) 32 Cal.App.4th 1133, 1139 [38 Cal.Rptr.2d 581].)

This case differs from *General Star Indemnity Co.* v. *Superior Court* (1996) 47 Cal.App.4th 1586 [55 Cal.Rptr.2d 322], upon which Nationwide relies. In *General Star Indemnity Co.*, the endorsement stated the insurer " 'shall have the right *but not the duty* to assume charge of the defense and/or settlement of any claim or "suit" brought against [the insured].' " (*Id.* at p. 1590, original italics.) This endorsement also stated the duty to defend could be " 'reinstated' " under certain circumstances, but those circumstances never occurred. (*Ibid.*) The reviewing court held there was no duty to defend under the "clear language of the policy." (*Id.* at pp. 1589, 1592-1593.) Other courts reaching similar conclusions have likewise emphasized the "clear and unambiguous" policy language negating the defense duty. (See *Alex Robertson Co.* v. *Imperial Casualty & Indemnity Co.* (1992) 8 Cal.App.4th 338, 343 [10 Cal.Rptr.2d 165] [no duty to defend third party where "policy provides in clear and unambiguous language that [insurer's] duty to defend extends only to [named insured and not to third party]"]; *Save Mart Supermarkets* v. *Underwriters*, *supra*, 843 F.Supp. 597, 603 [no *duty* to defend where policy "explicit[ly]" provides insurer with the *option* to participate in the defense].) ■ Unlike *General Star Indemnity Co.*, *Alex Robertson Co.*, and *Save Mart Supermarkets*, there was nothing in the policy before us negating Nationwide's duty to defend the additional insured.

■ In addition to the presumption of a defense duty, appellants' position is also supported by the fundamental tenet of insurance law that a duty to defend is broader than the duty to indemnify. (See *Montrose Chemical Corp.* v. *Superior Court* (1993) 6 Cal.4th 287, 300 [24 Cal.Rptr.2d 467, 861 P.2d 1153].) An insurer must defend any action that asserts a claim *potentially* seeking damages within the coverage of the policy. (*Ibid.*) "[T]he insured need only show that the underlying claim *may* fall within policy coverage . . . ." (*Ibid.*, original italics.) The duty to defend begins when a

potential for coverage arises, and the duty continues until the insurer proves otherwise. (*Buss v. Superior Court, supra,* 16 Cal.4th at pp. 45-46; *Montrose Chemical Corp.* v. *Superior Court, supra,* 6 Cal.4th at p. 300.)

■    Because of this broader scope of the defense duty, an insured could reasonably interpret the endorsements' limiting language to apply only to the scope of the indemnity obligation and expect the endorsements to include a duty to defend. Unlike the determination of the insurer's ultimate indemnity obligation, the focus for determining the existence of a defense duty is on the *potential* for coverage. Here, it was undisputed for purposes of summary judgment there was a *potential* for coverage: The plaintiffs' claims in the construction defect action could result in Nielsen's being "held liable" for the acts of the subcontractors. Because the underlying complaint alleged a potential for coverage—even if the potential was contingent on Nielsen's first being held vicariously liable—the defense duty arose when the plaintiffs asserted these claims. (See *Buss* v. *Superior Court, supra,* 16 Cal.4th at p. 47 [the insurer's duty to defend extends beyond claims that are "actually covered" to those that are "merely potentially so"].)

Nationwide alternatively maintains West Coast and Strang could not have "reasonably expected that they were obtaining full liability coverage for the additional insured endorsements" because they paid only a "minimal price" for the additional insured endorsements.

Viewing the totality of the circumstances, we are unpersuaded the premium cost establishes the insureds would have expected they were purchasing indemnity agreements without a duty to defend. First, as explained above, an insured would be entitled to reasonably rely on the policy language to conclude Nationwide had assumed a duty to defend Nielsen for potentially covered claims. Additionally, because the parties purchased the endorsements as protection against potential construction defect litigation, it is reasonable to assume they expected Nationwide to defend the general contractor. Since construction defect litigation is typically complex and expensive, a key motivation in procuring an additional insured endorsement is to offset the cost of defending lawsuits where the general contractor's liability is claimed to be derivative. (See *Montrose Chemical Corp.* v. *Superior Court, supra,* 6 Cal.4th at pp. 295-296 ["The insured's desire to secure the right to call on the insurer's superior resources for the defense of third party claims is . . . typically as significant a motive for the purchase of insurance as is the wish to obtain indemnity for possible liability."].) Since only a small percentage of these cases are resolved by a final liability determination, a defense obligation contingent on a liability finding would undermine a primary purpose for which the insurance was obtained.

We conclude the Strang and West Coast liability policies, as amended by the additional insured endorsements, required Nationwide to defend Nielsen for potentially covered claims. Because Nationwide owed a duty to defend and it was undisputed there was a potential for coverage, the summary judgment must be reversed.[4]

## DISPOSITION

The judgment is reversed and the cause remanded to the trial court for further proceedings in accord with the views expressed herein. Nationwide to bear costs on appeal.

Nares, Acting P. J., and McDonald, J., concurred.

---

[4]Because the issue is not before us, we do not reach the issue of the meaning of the endorsement for purposes of determining the precise scope of Nationwide's obligation to indemnify.