[No. G023182. Fourth Dist., Div. Three. June 11, 2001.]

PRESLEY HOMES, INC., Plaintiff and Appellant, v.
AMERICAN STATES INSURANCE COMPANY, Defendant and
Respondent.

## COUNSEL

Newmeyer & Dillion, Gregory L. Dillion, Gene M. Witkin, Timothy S. Menter and Reed N. Archambault for Plaintiff and Appellant.

Richards, Watson & Gershon, Erwin E. Adler, Benjamin Barnouw and Thomas M. Jimbo for Defendant and Respondent

## OPINION

**RYLAARSDAM, J.**—Plaintiff Presley Homes, Inc., sued defendant American States Insurance Company seeking damages, plus declaratory and injunctive relief. Defendant cross-complained against plaintiff for declaratory relief. The action involves a dispute over the extent of defendant's obligation under the additional insured endorsements of two insurance policies to provide plaintiff with a defense in a third party's construction defects lawsuit.

Each party moved for summary adjudication of issues. Plaintiff requested a finding that defendant "had a duty . . . to provide [plaintiff] with a full and complete (100%) defense of all claims, covered and noncovered, arising out the [third party] action . . . ." Defendant sought a finding the complaint lacked merit, in part, because plaintiff was "not entitled to a 'full and complete defense' under the [policies'] additional insured endorsements." The trial court denied plaintiff's motion, granted defendant's motion, and directed a judgment be entered for defendant on each of plaintiff's causes of action. Shortly after the court issued its ruling, defendant dismissed the cross-complaint.

Plaintiff appealed from the trial court's order. At our request, the parties jointly obtained entry of a final judgment, and we treat this appeal as taken from that judgment. Since plaintiff was entitled to have defendant provide a defense to the entire action as a matter of public policy, we reverse the trial court's decision.

## FACTS

Plaintiff, a real estate developer, contracted with Darrell Link Construction and Sunrise Framers to work on a residential construction project named Andora. Link's agreement required it to install concrete foundations, driveways, walkways, and stoops. Sunrise agreed to purchase the lumber and perform the project's rough carpentry work. The contracts required Link and Sunrise to amend their liability insurance policies to name plaintiff as an additional insured.

Link and Sunrise each had a commercial general liability policy with defendant. Under the policies, defendant agreed to "pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage.'" The policies also provided defendant "will have the right and duty to defend any 'suit' seeking those damages."

Link's policy included an endorsement amending the definition of an insured "to include [plaintiff] . . . subject to the following provisions. [¶] 1. This insurance applies only with respect to liability: [¶] a. Arising out of 'your work' for that insured by or for you; or [¶] b. Arising from the general supervision of 'your work' by [plaintiff]. [¶] 2. This insurance does not apply to 'bodily injury' or 'property damage' arising out of the sole negligence or willful misconduct of, or for defects in design furnished by, [plaintiff]." The endorsement also modified Link's policy to declare, "This insurance is primary, and our obligations are not affected by any other insurance carried by such additional insured whether primary, excess, contingent, or on any other basis." The additional insured endorsement in

Sunrise's policy stated as follows: "WHO IS AN INSURED (Section II) is amended to include [plaintiff] as an insured . . . , but only with respect to liability arising out of 'your work' for that insured by or for you."

Daniel and Denise Cassidy sued plaintiff seeking damages for defects in the construction of a residence they purchased in the Andora project. Plaintiff cross-complained for indemnity against several subcontractors, including Link and Sunrise.

Plaintiff tendered the defense of the Cassidy action to defendant. The latter agreed to share in plaintiff's defense, but denied having a duty to defend plaintiff against all of the Cassidys' claims. With respect to Sunrise, defendant proposed to retain separate counsel on the framing issues. The parties also discussed the possibility of defendant's paying a percentage of plaintiff's defense costs based on Sunrise's and Link's work on the Cassidy residence. When the parties failed to reach agreement, plaintiff sent defendant a letter demanding it provide a **"full and complete** defense," and that defendant "acknowledge its obligations to [plaintiff] by its immediate agreement to reimburse [plaintiff] for its attorney's fees and costs incurred . . . in this action. . . ." (Boldface in original.) Defendant maintained the position that it had a duty to defend plaintiff against only the claims relating to Link's and Sunrise's work.

The Cassidy action was resolved by a settlement with the subcontractors contributing to it. Plaintiff did not pay any part of the settlement, but did incur legal expenses in defending against the suit. Defendant presented declarations from claims supervisors asserting it settled plaintiff's indemnification claims for the defense costs attributable to Link's and Sunrise's work.

## DISCUSSION

The trial court ruled defendant did not have an obligation to provide plaintiff with a full and complete defense of all claims asserted in the Cassidy action. Plaintiff challenges the validity of this ruling. We conclude the trial court erred by holding defendant did not have a duty to defend the entire lawsuit.

■ The duty of an insurer to provide a defense is broad and applies when there is only a potential for coverage even if no covered loss is ultimately incurred. (*Aerojet-General Corp. v. Transport Indemnity Co.* (1997) 17 Cal.4th 38, 59 [70 Cal.Rptr.2d 118, 948 P.2d 909]; *County of San Bernardino v. Pacific Indemnity Co.* (1997) 56 Cal.App.4th 666, 679-680 [65 Cal.Rptr.2d 657].) Division One of this appellate district has recognized a subcontractor's insurer must provide a defense to a developer listed

as an additional insured under the subcontractor's liability policy when the developer is sued by a third party for construction defects allegedly resulting from the subcontractor's work. (*Maryland Casualty Co. v. Nationwide Ins. Co.* (1998) 65 Cal.App.4th 21, 31 [76 Cal.Rptr.2d 113].)

Defendant recognized it had a duty to defend plaintiff when it agreed to share in the cost of plaintiff's defense in the Cassidy action. Link's additional insured endorsement expressly described the policy as "primary" insurance, unaffected by plaintiff's other insurance coverage. ■ On appeal, defendant's brief repeatedly emphasizes the limited scope of its policies' "coverage" for plaintiff. While the additional insured endorsements may have limited defendant's indemnity obligation to cases where plaintiff is held vicariously liable for work performed by Link or Sunrise (see *Maryland Casualty Co. v. Nationwide Ins. Co., supra,* 65 Cal.App.4th at pp. 30, 33), the issue in this case is whether defendant properly limited the scope of its defense obligation to plaintiff.

It is settled that where an insurer has a duty to defend, the obligation generally applies to the entire action, even though the suit involves both covered and uncovered claims, or a single claim only partially covered by the policy. (*Aerojet-General Corp. v. Transport Indemnity Co., supra,* 17 Cal.4th at pp. 59-60; *Buss v. Superior Court* (1997) 16 Cal.4th 35, 48-49 [65 Cal.Rptr.2d 366, 939 P.2d 766]; *Horace Mann Ins. Co. v. Barbara B.* (1993) 4 Cal.4th 1076, 1081 [17 Cal.Rptr.2d 210, 846 P.2d 792]; *Hogan v. Midland National Ins. Co.* (1970) 3 Cal.3d 553, 563 [91 Cal.Rptr. 153, 476 P.2d 825]; *Blackfield v. Underwriters at Lloyd's, London* (1966) 245 Cal.App.2d 271, 275 [53 Cal.Rptr. 838].) The additional insured endorsements amended the policies' definition of the term "insured" to include plaintiff. Defendant assumed a duty to defend an action seeking damages for injury to property. While the endorsements limited the coverage for plaintiff to "liability" arising from Link's and Sunrise's work, nothing in either the policies or the endorsements limited defendant's obligation to provide plaintiff with a defense.

A similar contention was rejected in *Maryland Casualty Co. v. Nationwide Ins. Co., supra,* 65 Cal.App.4th 21. There Nielsen, a general contractor, hired subcontractors insured by Nationwide. The subcontractors' liability policies contained endorsements which listed Nielsen as an additional insured where Nielsen was "held liable" for the subcontractor's work. A third party sued Nielsen for construction defects. Nielsen tendered the action to Nationwide, but it refused to provide a defense. Plaintiffs, Nielsen's insurers, defended Nielsen and then sought contribution from Nationwide.

The Court of Appeal rejected a claim the limiting language contained in Nationwide's additional insured endorsements restricted its duty to provide Nielsen with a defense. "The additional insured endorsements made Nielsen an 'insured' under policies that expressly imposed a defense duty. The endorsements did not expressly or implicitly limit this defense obligation. Nationwide argues the requirement that the insurance applies 'only to the extent' Nielsen is 'held liable' is a clear and unambiguous statement eliminating its duty to defend Nielsen. But it is just as reasonable to view this phrase as referring only to the scope of Nationwide's indemnity obligation and limiting this obligation to situations where Nielsen is held liable for the acts of the named insured. Since a defense duty is broader than an indemnification obligation, the limitation on the scope of coverage does not eliminate the defense duty, but instead merely forms the parameters for that duty. [Citation.]" (*Maryland Casualty Co. v. Nationwide Ins. Co., supra,* 65 Cal.App.4th at p. 31.)

Defendant contends that in this case nothing supports a finding plaintiff had an objectively reasonable expectation of a full and complete defense, and this court lacks the power to rewrite the policies. This argument lacks merit because an insurer's duty to defend the entire action is based on public policy, not the terms of the parties' contract. In *Buss v. Superior Court, supra,* 16 Cal.4th 35, the Supreme Court explained the basis for this rule: "We cannot justify the insurer's duty to defend the entire 'mixed' action contractually, as an obligation arising out of the policy, and have never even attempted to do so. . . . [¶] That being said, we can, and do, justify the insurer's duty to defend the entire 'mixed' action prophylactically, as an obligation imposed by law in support of the policy. To defend meaningfully, the insurer must defend immediately. [Citation.] To defend immediately, it must defend entirely. It cannot parse the claims, dividing those that are at least potentially covered from those that are not. To do so would be time consuming. It might also be futile: The 'plasticity of modern pleading' [citation] allows the transformation of claims that are at least potentially covered into claims that are not, and vice versa." (*Id.* at pp. 48-49, fn. omitted.)

As noted, by agreeing to pay a share of plaintiff's defense costs, defendant effectively admitted it owed a duty to provide plaintiff with a defense. Its efforts during the pendency of the Cassidy action to limit its defense obligation to the portion attributable to Link's and Sunrise's potential exposure, and the delay in providing a defense while the parties attempted to reach a mutually acceptable percentage, highlights the very reason the

Supreme Court requires an insurer to provide a complete defense even where the underlying lawsuit includes both covered and uncovered claims. (See *Haskel, Inc. v. Superior Court* (1995) 33 Cal.App.4th 963, 976, fn. 9 [39 Cal.Rptr.2d 520].)

This rule does not result in any unfairness to defendant. Had defendant provided plaintiff with a complete defense in the Cassidy action, it could have sought contribution from other insurers obligated to defend the claim against plaintiff. (*Continental Cas. Co. v. Zurich Ins. Co.* (1961) 57 Cal.2d 27, 36-37 [17 Cal.Rptr. 12, 366 P.2d 455]; *Maryland Casualty Co. v. Nationwide Mutual Ins. Co.* (2000) 81 Cal.App.4th 1082, 1089 [97 Cal.Rptr.2d 374]; *Fireman's Fund Ins. Co. v. Maryland Casualty Co.* (1998) 65 Cal.App.4th 1279, 1293 [77 Cal.Rptr.2d 296].)

Defendant also focuses on the fact plaintiff did not pay a premium for the additional insured endorsements added to Link and Sunrise's policies. *Maryland Casualty Co. v. Nationwide Ins. Co., supra,* 65 Cal.App.4th 21, considered and rejected this argument as well. "Viewing the totality of the circumstances, we are unpersuaded the premium cost establishes the insureds would have expected they were purchasing indemnity agreements without a duty to defend. First, as explained above, an insured would be entitled to reasonably rely on the policy language to conclude Nationwide had assumed a duty to defend Nielsen for potentially covered claims. Additionally, because the parties purchased the endorsements as protection against potential construction defect litigation, it is reasonable to assume they expected Nationwide to defend the general contractor. Since construction defect litigation is typically complex and expensive, a key motivation in procuring an additional insured endorsement is to offset the cost of defending lawsuits where the general contractor's liability is claimed to be derivative. [Citation.]" (*Id.* at p. 33; see also *Pardee Construction Co. v. Insurance Co. of the West* (2000) 77 Cal.App.4th 1340, 1361 [92 Cal.Rptr.2d 443].)

The payment of an additional premium would appear to be a matter of contract between defendant and the subcontractors it agreed to insure. Presumably, Link and Sunrise considered the cost of their liability insurance, including the additional insured endorsement, when each submitted a bid on the Andora project. If, as defendant asserts, it simply provided the additional insured endorsements without increasing the amount of the subcontractors' premiums, that still would not affect a covered party's reliance on the policies' language and the nature of the activity covered by them.

## DISPOSITION

The judgment is reversed and the matter remanded to the superior court for further proceedings. Appellant shall recover its costs on appeal.

Sills, P. J., and Bedsworth, J., concurred.

A petition for a rehearing was denied July 10, 2001, and respondent's petition for review by the Supreme Court was denied September 19, 2001. Chin, J., did not participate therein. Kennard, J., was of the opinion that the petition should be granted.