Filed 11/21/17; pub. order 12/12/17 (see end of opn.)

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| ADMIRAL INSURANCE COMPANY, | D072267 |
| Petitioner, | |
| v. | (Super. Ct. No. 37-2016-00016722-IC-CTL) |
| THE SUPERIOR COURT OF SAN DIEGO COUNTY, | |
| Respondent; | |
| A PERFECT MATCH, INC., | |
| Real Party in Interest. | |

ORIGINAL PROCEEDING in mandate challenging an order of the Superior

Court of San Diego County.  Ronald L. Styn, Judge.  Petition granted.

Walsh McKean Furcolo, John H. Walsh, and Laura E. Stewart for Petitioner.

No appearance for Respondent.

Law Offices of Craig A. Miller, and Craig A. Miller for Real Party in Interest.

This is a case about the meaning of a professional liability insurance policy. The policy in question was issued by petitioner Admiral Insurance Company (Admiral) to the real party in interest, A Perfect Match, Incorporated (Perfect Match), a company that "match[es] surrogates and egg donors with infertile families." On the first page of the policy Admiral promised to provide coverage for certain claims made during the policy period arising from a "professional incident, . . . provided that prior to the inception date of the policy, no insured knew, nor could have reasonably foreseen, that the professional incident might result in a claim." In other words, Admiral was excluding coverage for potential claims that Perfect Match knew or reasonably should have known about, but failed to disclose.

In this case, prior to purchasing the Admiral policy, there is no question Perfect Match knew about a potential claim former clients Monica Ghersi and Carlos Arango intended to file arising from the birth of their daughter with a rare form of eye cancer. A lawyer representing Ghersi and Arango sent a letter to Perfect Match in June 2012 giving notice of their intent to file a complaint alleging professional negligence. After consulting with its insurance broker, Perfect Match made the decision not to disclose the potential Ghersi/Arango claim to its current insurer out of concern it would result in a higher premium. When it applied for the Admiral policy in October 2012, Perfect Match likewise did not mention the potential Ghersi/Arango claim. But once the Ghersi/Arango complaint was filed and ultimately served in March 2013, Perfect Match claimed potential coverage under the Admiral policy based on a "professional incident" and asserted its right to a defense. Admiral denied coverage and refused to defend, citing the

2

policy language that excluded coverage for claims the insured reasonably should have foreseen prior to inception of the policy.  Perfect Match responded with this lawsuit alleging breach of contract and bad faith.

The interpretation of a written contract, such as an insurance policy, is a question of law for the court where the foundational facts are not in dispute.  There are no material factual disputes in this case.  Admiral was entitled to insist that Perfect Match disclose all potential claims of which it was, or should have been, aware; it could and did exclude from coverage any such claim that was not disclosed.  The superior court therefore erred in failing to grant summary judgment in favor of Admiral.  Accordingly, we will issue a writ of mandate directing the superior court to vacate its order denying Admiral's motion for summary judgment and instead enter an order granting the motion.

FACTUAL AND PROCEDURAL BACKGROUND

In 2011, Monica Ghersi and Carlos Arango utilized the services of Perfect Match to locate an egg donor and gestational surrogate.  The surrogate gave birth to a baby girl who developed a retinoblastoma, a rare cancer of the eye.  Following an investigation, Ghersi and Arango retained counsel who sent Perfect Match three letters in June 2012, one on behalf of each parent and one on behalf of their infant daughter.  Each letter referenced Code of Civil Procedure section 364 and announced an intent to file a complaint against Perfect Match alleging "negligent and unprofessional . . . conduct, while in the performance of professional duties, intentionally or recklessly causing physical and emotional harm. . . ."  The letters on behalf of Ghersi and Arango stated the complaint would be based on "medical negligence and lack of informed consent."  The

3

daughter's letter said the complaint would be based on "medical negligence, lack of informed consent and any other applicable causes of action."

Upon receiving the letters, Perfect Match consulted with its insurance broker. Interpreting the letters as something less than an actual "claim" and concerned about a possible increase in premiums, it decided not to notify its current insurer.

In October 2012, Perfect Match applied to Admiral for a new commercial liability policy. The application inquired, among other things, whether the applicant was "aware of any act, error, omission, fact, circumstance, or records request from any attorney which may result in a malpractice claim or suit?" Perfect Match responded, "No." Nor did Perfect Match disclose anything about the potential Ghersi/Arango claim anywhere else on the application or otherwise to Admiral.

Admiral issued a commercial liability policy to Perfect Match covering claims made during the period from December 5, 2012 through December 5, 2013. It agreed to pay amounts that Perfect Match was "legally obligated to pay as damages caused by a professional incident . . . for which a claim is first made against the insured during the policy period." "Professional incident" was defined elsewhere in the policy as "a negligent act, error or omission in the rendering of or failure to render professional services by the insured." There was one critical limitation. Admiral was obligated to pay only if "prior to the inception date of the policy, no insured knew, nor could have reasonably foreseen, that the professional incident might result in a claim."

Ghersi and Arango filed suit against Perfect Match alleging professional negligence, and a first amended complaint was ultimately served on the company in

4

March 2013. Perfect Match notified Admiral, which refused to defend or indemnify. Perfect Match responded with this lawsuit against Admiral alleging breach of the insurance contract and bad faith. Admiral moved for summary judgment, arguing there was no possibility of coverage under the policy because prior to the inception of the policy Perfect Match knew or reasonably could have foreseen that the professional services it provided to Ghersi and Arango might result in a claim. It also contended that Perfect Match made material misrepresentations in its application for insurance. In its response, Perfect Match focused on its assertion that the application for insurance it was directed to complete was "wholly inappropriate for the kind of business" it operates. It emphasized that it was not a licensed health care provider and did not employ doctors, nurses, or other health care professionals.

In denying Admiral's summary judgment motion, the superior court determined that triable issues of fact were created by Admiral's reliance on an application form that was designed for "medical laboratories, medical imaging centers and blood plasmapheresis centers." As a result, it concluded there was a disputed question whether Perfect Match could truthfully answer "no" to the question whether it was aware of anything that might result in a *malpractice* claim, since it was not a health care provider that rendered professional medical services. The court also found an issue of fact "as to whether Admiral may rely on the 'prior notice' condition to deny coverage. . . ."

DISCUSSION

The interpretation of a written contract such as an insurance policy is generally a question of law for the court unless the foundational extrinsic evidence is in conflict.

5

(*Parsons v. Bristol Development Co.* (1965) 62 Cal.2d 861, 865–866; *Maryland Casualty Co. v. Nationwide Ins. Co.* (1998) 65 Cal.App.4th 21, 29.)  Here, although the parties "dispute the inferences to be drawn from [the] extrinsic evidence, the evidentiary facts themselves are not in conflict." (*Medical Operations Management, Inc. v. National Health Laboratories, Inc.* (1986) 176 Cal.App.3d 886, 892.)  With no conflict in the foundational extrinsic evidence, it is left to the court to decide the question of law by determining the meaning of the contract in light of the undisputed evidence and the objectively reasonable expectations of the insured.  (*Maryland Casualty Co.*, at p. 29.)

Perfect Match's opposition to Admiral's summary judgment motion focused on the uncertainties created by Admiral's reliance on an application form that was ill-suited to the type of business it operated.  The form was plainly designed for medical laboratories, imaging centers, and similar health care facilities.  Because Perfect Match was not a health care provider, we can assume for purposes of argument that it was not being untruthful when it represented on the application form that it was unaware of any existing basis for a "*malpractice* claim."

But the application form and the responses to the questions on it are largely a red herring because the policy (i.e., the parties' agreement) itself explains there is no coverage for a claim arising from a "professional incident" if, prior to the inception of the policy, the insured "knew" or "could have reasonably foreseen, that the professional incident might result in a claim."  Relying on the letters sent by the lawyer representing Ghersi and Arango, Admiral persuasively argues that the plain meaning of this "prior notice" provision precludes any coverage.

6

Perfect Match responds that the "prior notice" language of the policy must be read in conjunction with the application, which provides "context" for understanding the policy. Read in proper context, Perfect Match suggests, the policy excludes coverage only if, prior to the inception date, an insured *health care professional* knew or could have reasonably foreseen that its actions might result in a *medical malpractice* claim. To be sure, the language of a contract must be construed in the context of the instrument as a whole and all the surrounding circumstances.[1] (*Producers Dairy Delivery Co. v. Sentry Ins. Co.* (1986) 41 Cal.3d 903, 916; *Pacific Gas & E. Co. v. G. W. Thomas Drayage etc. Co.* (1968) 69 Cal.2d 33, 38.) The ultimate question, however, is whether the document and surrounding context will support "a meaning to which the language of the instrument is reasonably susceptible." (*Pacific Gas & E. Co.*, at p. 37.)

Perfect Match's argument fails to offer a reasonable meaning for the language of the policy. The "prior notice" provision is an integral part of the insuring agreement itself. It specifies there is no coverage if the insured knew or reasonably could have foreseen that the professional incident might result in a claim. Coverage is tied to a "professional incident." The policy provides coverage for amounts the insured is required to pay as damages "caused by a professional incident." If "professional incident" were construed to mean "medical malpractice," Perfect Match (which is

---

[1] In this regard, however, the policy itself emphasizes that "[t]he policy applied for is SOLELY AS STATED IN THE POLICY." Thus, while the application may provide context to assist in interpreting the policy, the language of the policy controls over any conflicting inference that might be drawn from the application.

7

concededly not a licensed health care provider) would have no coverage for anything. Such a result would be inconsistent with the reasonable expectations of all the parties.

Here, the undisputed facts demonstrate that Perfect Match had notice prior to the inception of the policy that Ghersi and Arango intended to file a lawsuit for breach of contract and negligence. Even if there was some confusion as to whether Ghersi and Arango properly labeled their claim as a "medical negligence" action or invoked the appropriate code section, the policy only requires that the insured be able to foresee that a claim "might" be made. Counsel's June 2012 letters provided indisputable notice to Perfect Match that its professional services rendered to Ghersi and Arango "might result in a claim." Accordingly, by the clear terms of the policy, there was no coverage. (See *Phoenix Ins. Co. v. Sukut Construction Co.* (1982) 136 Cal.App.3d 673, 676–677.)

DISPOSITION

Let a writ of mandate issue directing the superior court to vacate its order dated May 5, 2017 denying Admiral's motion for summary judgment and instead issue an order granting the motion. This court's order staying proceedings in the superior court is vacated. Admiral is awarded costs incurred in this proceeding. (Cal. Rules of Court, rule 8.493(a)(1)(A), (2).)

DATO, J.

WE CONCUR:


McCONNELL, P. J.


HALLER, J.

Filed 12/12/17

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| ADMIRAL INSURANCE COMPANY,<br><br>      Petitioner,<br><br>      v.<br><br>THE SUPERIOR COURT OF<br>SAN DIEGO COUNTY,<br><br>      Respondent; | D072267<br><br><br><br>(Super. Ct. No.<br> 37-2016-00016722-IC-CTL) |
| A PERFECT MATCH, INC.,<br><br>      Real Party in Interest. | |

THE COURT:

The opinion in this case filed November 21, 2017 was not certified for publication. It appearing the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c), the request pursuant to California Rules of Court, rule 8.1120(a), for publication is GRANTED.

IT IS HEREBY CERTIFIED that the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c); and

ORDERED that the words "Not to Be Published in the Official Reports" appearing on page one of said opinion be deleted and the opinion herein be published in the Official Reports.

McCONNELL, P. J.

Copies to:  All parties