[No. D020940. Fourth Dist., Div. One. Sept. 4, 1996.]

MARYLAND CASUALTY COMPANY, Plaintiff and Respondent, v. NATIONAL AMERICAN INSURANCE COMPANY OF CALIFORNIA, Defendant and Appellant.

**COUNSEL**

Fisher & Hurst, Dennis Gildea and Dominic G. Flamiano for Defendant and Appellant.

Haasis, Pope & Correll, Terrell A. Quealy, Lewis, D'Amato, Brisbois & Bisgaard and Robert V. Closson for Plaintiff and Respondent.

## OPINION

**HALLER, J.**—In this declaratory relief action between successive third party liability carriers, National American Insurance Company of California (NAICC) appeals a summary judgment in favor of Maryland Casualty Company (Maryland) determining NAICC had a duty to defend its insured, developer Midway Homes, Inc., and related parties (Midway Homes), in underlying condominium construction defect litigation. NAICC contends (1) Maryland had no standing to enforce a duty owed their mutual insured and (2) the trial court erred in granting summary judgment because (a) Maryland alone was obligated to defend Midway Homes and (b) Midway Homes concealed property damages existing before NAICC's policy period. We conclude the contentions are without merit and accordingly affirm the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

Midway Homes, builder of the 277-unit Lake Park Terrace condominium project, obtained third party liability insurance from Maryland between February 1977 and approximately August 1984, and from NAICC between July 21, 1984, and July 21, 1985. Coverage under the policies was triggered by an occurrence of property damages within the policy periods.[1]

On October 21, 1991, the Lake Park Terrace Homeowners Association (Association) filed a complaint against Midway Homes alleging a host of construction defects, involving, among other things, roofs, site drainage, soils, concrete and foundations, asphalt and paving, waterproofing, stucco and framing. A complaint amendment alleged "[t]he damage alleged herein occurred at various times in various phases of the Project."

Midway Homes tendered defense of the action to Maryland, which accepted under a reservation of rights. Maryland in turn tendered Midway Homes's defense to NAICC, but NAICC refused to contribute to defense costs.

In June 1993, Maryland filed this action. In October 1993, Maryland filed a motion for summary judgment, seeking a declaration NAICC was required

---

[1]The NAICC policy stated NAICC would "pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of [property damage] . . . to which this insurance applies caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such . . . property damage, even if any of the allegations of the suit are groundless, false or fraudulent . . . ." The policy defined "property damage" as "physical injury to or destruction of tangible property which occurs during the policy period." It defined "occurrence" as "an accident, including continuous or repeated exposure to conditions, which results in . . . property damage neither expected nor intended from the standpoint of the insured."

to defend Midway Homes in the Lake Park Terrace case because as a matter of law there were potentially covered occurrences during NAICC's policy period. Among the evidence Maryland presented in support of the motion were recorded notices of completion for the Lake Park Terrace construction phases as follows:

| Phase I | May 21, 1979 |
| Phase II | September 3, 1980 |
| Phase III | December 13, 1983 |
| Phase IV | October 18, 1984 |
| Phase V | September 10, 1985 |

Each phase included several buildings housing a number of condominium units.

Maryland also presented evidence establishing roofing, asphalt, plumbing and garage problems in late 1984 and 1985 during NAICC's policy period. Roof leaks required roof and drywall repairs to numerous units during the same time frame.

In opposition to Maryland's motion, NAICC argued it had no duty to defend Midway Homes because the events triggering coverage did not occur during the NAICC policy period. NAICC urged the court to apply a "manifestation of damage" theory, under which the carrier insuring the risk when damages first became apparent is solely responsible for all resulting losses continuing into successive insurers' policy periods. At Lake Park Terrace, asphalt problems surfaced in 1981; roof problems were first reported in 1983 and drywall repairs were made in 1983 and April 1984. Thus, NAICC argued, Maryland was solely responsible for defending Midway Homes.

Alternatively, NAICC argued Midway Homes's concealment of prepolicy damages at Lake Park Terrace abrogated any NAICC defense duty. In support, NAICC submitted (1) deposition testimony of a Midway Homes's employee that he had unspecified involvement with insurance coverage and was aware of prepolicy asphalt and roofing problems at Lake Park Terrace, (2) the declaration of NAICC's underwriter who averred he would not have issued the policy had he known of preexisting property damages, and (3) a memorandum from the underwriter to Midway Homes's insurance agent stating the NAICC policy was issued "based on the strength of your agency having insured this risk for 20 [years] with a 25% or less loss ratio over the past 3 [years]. As we discussed, we normally would decline a general contractor."

The trial court found the potential for coverage under the NAICC policy and thus ordered NAICC to defend Midway Homes in the Lake Park Terrace

action. On appeal, NAICC contends the trial court erred because (1) Maryland was not a party to the insurance contract and was thus without standing to enforce any defense duty NAICC owed Midway Homes, (2) under a manifestation of damage theory Maryland alone was obligated to defend Midway Homes since damages first appeared during its policy periods, and (3) NAICC raised triable issues of material fact regarding whether Midway Homes's alleged concealment of preexisting damages precluded coverage.

DISCUSSION

### I. *Maryland's Standing*

 Preliminarily, we must determine whether there is any merit to NAICC's contention Maryland lacked standing to pursue this action because Maryland was not a party to the insurance contract between NAICC and Midway Homes. NAICC concedes "[t]here is no doubt that Maryland, as a primary insurer of the same insured, may seek equitable remedies such as equitable subrogation, contribution or indemnification." NAICC argues, however, an action is premature pending resolution of the underlying lawsuit, because the obligation to pay defense costs "ultimately is determined according to the insurers' respective liabilities for indemnity," and "if Maryland were to fail to establish *actual* covered damages first manifest during the NAICC policy, NAICC should not bear any portion of the defense costs." (Original italics.)

NAICC ignores the critical distinction between an insurer's defense and indemnity obligations. The defense duty is not contingent upon indemnity liability, but is determined at the outset of the underlying action by comparing the policy provisions with the complaint allegations and any relevant extrinsic evidence to determine if there is any potential of coverage under the policy. If there is, a defense is owed even where ultimately it is determined there was no coverage and therefore no indemnity liability. (*Gray v. Zurich Insurance Co.* (1966) 65 Cal.2d 263, 276 [54 Cal.Rptr. 104, 419 P.2d 168].) NAICC is thus incorrect in suggesting an insurer may avoid liability for defense costs altogether by refusing to contribute during pendency of the underlying action. Even if it is ultimately determined no coverage existed, the insurer [refusing to defend] is liable for defense costs if there was any potential of coverage under the policy during pendency of the action.

It is immaterial Maryland was not a party to NAICC's contract with Midway Homes. "The reciprocal rights and duties of several insurers who have covered the same event do not arise out of contract, for their

agreements are not with each other. [Citations.] Their respective obligations flow from equitable principles designed to accomplish ultimate justice in the bearing of a specific burden. As these principles do not stem from agreement between the insurers their application is not controlled by the language of their contracts with the respective policy holders." (*Amer. Auto. Ins. Co.* v. *Seaboard Surety Co.* (1957) 155 Cal.App.2d 192, 195-196 [318 P.2d 84].)

An insurer's duty to provide defense services inures to the benefit of other obligated insurers and an insurer breaching the defense duty should not be allowed to profit at the expense of an insurer faithfully discharging its obligation. (*Continental Cas. Co.* v. *Zurich Ins. Co.* (1961) 57 Cal.2d 27, 37-38 [17 Cal.Rptr. 12, 366 P.2d 455].) An insurer is thus subrogated to the insured's right to enforce another insurer's duty to defend. (*Hartford Acc. & Indem. Co.* v. *Pacific Indem. Co.* (1967) 249 Cal.App.2d 432, 435 [57 Cal.Rptr. 492].) "[I]t is well established that where two insurers should share pro rata in a loss, either can assert the rights of the insured against the other. [Citations.] This is in keeping with the rule . . . the policies should be construed in favor of maximizing coverage even where the insured's rights are being asserted by another carrier." (*Spott Electrical Co.* v. *Industrial Indem. Co.* (1973) 30 Cal.App.3d 797, 801-802 [106 Cal.Rptr. 710].)

We conclude Maryland was subrogated to Midway Homes's right to enforce NAICC's defense duty and therefore had standing to pursue this action.

## II. *Summary Judgment Was Proper*

### A. *Manifestation of Damage Theory Is Inapplicable*

NAICC argues it was not obligated to defend Midway Homes because property damages were first manifested during Maryland's policy period, and therefore Maryland was required to cover the entire loss. NAICC relies primarily on *Home Ins. Co.* v. *Landmark Ins. Co.* (1988) 205 Cal.App.3d 1388 [253 Cal.Rptr. 277] and *Fireman's Fund Ins. Co.* v. *Aetna Casualty & Surety Co.* (1990) 223 Cal.App.3d 1621 [273 Cal.Rptr. 431], first and third party liability cases, respectively, in which this court held the insurer on the risk at the time deterioration caused by construction defects was first manifested was liable for the entire loss even though deterioration continued into successive insurers' policy periods.

We need not engage in a lengthy discussion concerning NAICC's argument. Our Supreme Court has addressed this issue in a factual scenario consistent with the one presented here and has resolved it adversely to

NAICC. In *Montrose Chemical Corp.* v. *Admiral Ins. Co.* (1995) 10 Cal.4th 645 [42 Cal.Rptr.2d 324, 897 P.2d 1] (*Montrose II*), the Supreme Court made clear first party progressive damage cases, such as *Home Ins. Co.,* are inapplicable in the third party context (*id.* at p. 684), disapproved *Fireman's Fund* (*id.* at p. 685), and held a "continuous injury trigger" of coverage applies to third party liability insurance cases involving continuous or progressive damage (*id.* at p. 689).

Under the continuous injury theory, "bodily injuries and property damage that are continuous or progressively deteriorating throughout successive policy periods are covered by all policies in effect during those periods." (*Montrose II, supra,* 10 Cal.4th at p. 675.) The date of discovery of the injury or damage is not controlling. "It is only the *effect*—the occurrence of bodily injury or property damage during the policy period, resulting from a sudden accidental event or the 'continuous or repeated exposure to conditions'—that triggers potential liability coverage." (*Ibid.,* original italics.) ▇▇▇ In other words, all carriers on the risk between the time damages begin and end potentially cover the loss.

We conclude the continuing injury trigger of coverage applied in *Montrose II* is applicable here. Accordingly, the manifestation of property damage before the NAICC policy began did not automatically relieve NAICC of its obligation to defend its insured.

## B. *Maryland Met Its Burden of Proving Potential of Coverage Under the NAICC Policy*

NAICC argues the court erred in granting the motion for summary judgment because Maryland failed to prove there was a covered occurrence during NAICC's policy period. The argument is unpersuasive. Contrary to NAICC's assertion, Maryland was not required to prove there was an occurrence within the meaning of NAICC's policy. Rather, Maryland was required only to establish the *potential* Midway Homes was covered by the NAICC policy for losses at Lake Park Terrace. ▇▇▇ The distinction is subtle but critical to analyzing the propriety of the trial court's ruling. "It is by now a familiar principle that a liability insurer owes a broad duty to defend its insured against claims that create a potential for indemnity. [Citation.] . . . 'the carrier must defend a suit which *potentially* seeks damages within the coverage of the policy.' [Citation.] Implicit in this rule is the principle that the duty to defend is broader than the duty to indemnify; an insurer may owe a duty to defend its insured in an action in which no damages ultimately are awarded. [Citations.] [¶] The determination whether

the insurer owes a duty to defend usually is made in the first instance by comparing the allegations of the complaint with the terms of the policy. Facts extrinsic to the complaint also give rise to a duty to defend when they reveal a possibility that the claim may be covered by the policy. [Citation.]" (*Horace Mann Ins. Co.* v. *Barbara B.* (1993) 4 Cal.4th 1076, 1081 [17 Cal.Rptr.2d 210, 846 P.2d 792], original italics.) The insurer is relieved of its duty only where "the third party complaint *can by no conceivable theory raise a single issue which could bring it within the policy coverage.*" (*Gray* v. *Zurich Insurance Co., supra*, 65 Cal.2d at p. 276, fn. 15, italics added.) Any doubt as to whether the insurer has a duty to defend is resolved in the insured's favor. (*Horace Mann Ins. Co.* v. *Barbara B., supra*, 4 Cal.4th at p. 1081.)

*Montrose Chemical Corp.* v. *Superior Court* (1993) 6 Cal.4th 287 [24 Cal.Rptr.2d 467, 861 P.2d 1153] (*Montrose I*), explains the parties' burdens of proof in a declaratory relief action regarding the duty to defend. "To prevail, the insured must prove the existence of a *potential for coverage*, while the insurer must establish *the absence of any such potential.* In other words, the insured need only show that the underlying claim *may* fall within policy coverage; the insurer must prove it *cannot.* Facts merely tending to show that the claim is not covered, or may not be covered, but are insufficient to eliminate the possibility that resultant damages . . . will fall within the scope of coverage, therefore add no weight to the scales. Any seeming disparity in the respective burdens merely reflects the substantive law." (*Id.* at p. 300, original italics.)

Here, the Association's amended complaint alleged a variety of construction defects caused damages to occur at "various times" in various phases of the project. Further, Maryland produced extrinsic evidence of damages associated with roofing, drywall, asphalt, plumbing and garages in 1984 and 1985 when NAICC insured Midway Homes. Applying the principles set forth above, and comparing the NAICC policy provisions with the Association's amended complaint and Maryland's extrinsic evidence, we conclude Maryland established prima facie evidence of the potential for coverage under NAICC's policy. Thus Maryland met its burden.

## C. *NAICC Did Not Conclusively Prove No Potential for Coverage*

NAICC contends even if Maryland met its burden to establish the potential of a covered occurrence, the court erred in granting the motion for summary judgment because NAICC raised triable issues of material fact regarding whether Midway Homes concealed preexisting property damages

and, if so, whether that voided coverage.[2] NAICC ignores controlling authority and misunderstands its burden in opposing Maryland's motion.

 NAICC could not defeat Maryland's motion merely by raising a triable issue of material fact. Once a prima facie showing is made that the underlying action fell within coverage provisions, an insurer may defeat a motion for summary judgment only by producing undisputed extrinsic evidence conclusively eliminating the potential for coverage under the policy. (*Montrose I, supra*, 6 Cal.4th at pp. 298-299.) Evidence that merely "placed in dispute whether [the insured's] actions would eventually be determined not to constitute an occurrence or to fall within one or more of the exclusions contained in the policies" is insufficient to defeat the insured's right to summary judgment. (*Id.* at p. 304.) The question is, therefore, whether NAICC produced undisputed evidence of concealment negating coverage potential as a matter of law.

NAICC's evidence included the acknowledgment by a Midway Homes employee, with unspecified involvement in insurance matters, of some property damages at Lake Park Terrace before the NAICC policy period, the claim by NAICC's underwriter that he would not have written the policy if he had known about the prepolicy damages and a cryptic memorandum from the underwriter to Midway Homes's insurance agent as to NAICC writing the policy based on Midway Homes's purported "25% or less loss ratio over the past 3 [years]." NAICC produced no evidence it had questioned Midway Homes about prepolicy property losses. " '[W]here . . . the insurer fails to question the insured, the latter cannot be said to have concealed facts so as to void the policy unless they are facts which he [or she] knows, or which a reasonable [person] should have known, to be material to the risk and unless he [or she] does so for the purpose of obtaining insurance which could not have been obtained after a disclosure of such facts.' " (*Olson v. Standard Marine Ins. Co., supra*, 109 Cal.App.2d at p. 138.)[3] The knowledge of the Midway Homes employee as to damages preexisting the NAICC policy was thus not dispositive. Further, the memorandum by

---

[2]An insured's failure to reveal certain information may void coverage. "Neglect to communicate that which a party knows, and ought to communicate, is concealment." (Ins. Code, § 330.) "Concealment, whether intentional or unintentional, entitles the injured party to rescind insurance." (Ins. Code, § 331.) An insurer has the burden of proving concealment. (*Olson v. Standard Marine Ins. Co.* (1952) 109 Cal.App.2d 130, 137-138 [240 P.2d 379].)

[3]The cases upon which NAICC relies are inapplicable because in each it was without dispute that the insured withheld information specifically sought by the insurer. (*Williamson & Vollmer Engineering, Inc.* v. *Sequoia Ins. Co.* (1976) 64 Cal.App.3d 261, 267-268, 273 [134 Cal.Rptr. 427] [architect's denial on insurance application of previous claims]; *Old Line Life Ins. Co.* v. *Superior Court* (1991) 229 Cal.App.3d 1600, 1607 [281 Cal.Rptr. 15] [insurer's denial on insurance application of smoking].)

NAICC's underwriter regarding "loss ratio" was ambiguous. Maryland disputed the evidence and its import.

On this record, we conclude NAICC did not meet its burden of proof.[4] While NAICC raised evidence of concealment, it did not present sufficient evidence to establish that defense as a matter of law. If, at a later time, NAICC successfully proves up its concealment theory, this would eliminate its obligations under the policy, including its duty to defend. However, until such time the insurer prevails, its duty to defend continues. The fact the trial court found a duty to defend does not cut off NAICC's right to litigate its concealment defense in some other forum.[5]

The trial court correctly determined NAICC was required to defend Midway Homes in the Lake Park Terrace action.

### DISPOSITION

The judgment is affirmed.

Kremer, P. J., and Nares, J., concurred.

---

[4]Because we affirm the judgment, we are not required to consider Maryland's argument NAICC waived its right to raise concealment as a basis for rescinding the insurance policy.

[5]At oral argument, counsel advised that the underlying construction defect litigation has been resolved and a contribution action is pending between Maryland and NAICC.