# United States Court of Appeals
## For the First Circuit

No. 13-2474

FRANK RUKSZNIS,

Plaintiff, Appellant,

v.

ARGONAUT INSURANCE COMPANY,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. D. Brock Hornby, U.S. District Judge]

Before

Lynch, Chief Judge,
Lipez, Circuit Judge,
and Lisi,* District Judge.

Arthur J. Grief, with whom Julie D. Farr and Gilbert & Grief, P.A. were on brief, for appellant.
Richard R. Eurich, with whom Michael H. Hayden and Morrison Mahoney LLP were on brief, for appellee.

December 18, 2014

---

*Of the District of Rhode Island, sitting by designation.

**LIPEZ, Circuit Judge**.  Appellant Frank Ruksznis, former plumbing inspector for the Town of Sangerville ("the Town"), obtained a judgment against Lance Burgess, a Town Selectman, for slander. Ruksznis sought to collect the judgment through this reach and apply action against the Town's insurer, Argonaut Insurance Company ("Argonaut"). The district court granted summary judgment for Argonaut, finding that the exclusions in the insurance contract for "employment-related" practices barred Ruksznis's recovery. Because we agree that the term "employment" unambiguously covers Ruksznis's relationship with the Town, and the policy therefore excludes coverage, we affirm.

## I.

We draw the facts from the complaint in the underlying slander and civil rights action, as well as from the summary judgment record in the case before us.

Ruksznis served as the appointed[1] plumbing inspector for the Town from approximately 1993 until 2010. Each year from 1993 until 2010, he was reappointed for an additional one-year post. As plumbing inspector, Ruksznis set his own hours, provided his own tools, paid for all of his own expenses, and paid for any schooling

---

[1]  See Me. Rev. Stat. tit. 30-A, § 4221(1) (2011) (providing for the appointment of plumbing inspectors by municipal officers, compensation as determined by municipal officers, payment for services by the respective municipalities, and removal from office for cause).

to update his license.[2] Ruksznis describes himself as an independent contractor. Although Argonaut describes Ruksznis as an employee, they argue that even if he were an independent contractor, he was nonetheless in an employment relationship with the Town within the meaning of the insurance policies.

The Town held two insurance policies from Argonaut relevant to this case: a Commercial General Liability ("CGL") policy and a Public Officials Liability ("POL") policy. Each policy covered personal injury claims generally, but each also contained an exclusion for "employment-related" activity. The CGL policy's "employment-related practices exclusion" states that insurance for personal and advertising injury does not apply to claims "arising out of any . . . Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person." The POL policy's exclusion precludes coverage for "[a]ny claim arising out of employment or application for employment with any insured, or any other employment related policies or practices." The policies do not define either "employment" or "employment-related."

At a public meeting of the Sangerville Board of Selectmen on April 13, 2010, Selectman Burgess stated that Ruksznis had made

---

[2] In his affidavit Ruksznis asserts that he also served as the plumbing inspector for Guilford, Abbot, Atkinson, Blanchard, Dover-Foxcroft, Monson, Dexter, and Willimantic.

-3-

"less than quality decisions" while serving as plumbing inspector, and that "there has [sic] been a couple of issues concerning both his job performance and actions outside of work. I can't comment on what happened last year because I wasn't on the Board and I believe the Selectmen discussed it in the executive session."

At the next Selectmen's meeting on April 22, Burgess took unspecified actions that caused Ruksznis to be removed from his position as plumbing inspector. Although informed by the Maine Municipal Association that Ruksznis's removal had not complied with procedures required by state law, Burgess blocked Ruksznis's reinstatement.

Ruksznis subsequently filed an action in the District of Maine asserting a claim of common law slander and violations of his constitutional right to due process under 42 U.S.C. § 1983. Pursuant to Federal Rule of Civil Procedure 68, Burgess filed an Offer of Judgment in the amount of $100,000, which Ruksznis accepted. The Offer of Judgment did not allocate the payment between claims nor did it specify that it was for both the slander and civil rights claims. After judgment was entered, Ruksznis initiated this reach and apply action against Argonaut seeking to recover for the slander count under the CGL policy and for the due process claims under the POL policy.

Argonaut moved for summary judgment, arguing that exclusions in both policies barred Ruksznis's recovery.

Specifically, it invoked an exclusion for "Governmental Errors and Omissions" in the CGL policy and exclusions for "employment-related" practices in both policies. In a cross-motion for summary judgment, Ruksznis argued that both exclusions were inapplicable. He claimed that the employment-related exclusion did not apply because he was an independent contractor rather than a Town "employee." He further asserted that, at a minimum, the policy language was ambiguous and, hence, the provisions must be construed in his favor. The district court denied Ruksznis's motion and granted Argonaut's motion on the ground that Ruksznis's claim "plainly arose from an employment-related dispute" and that the exclusion unambiguously covered Ruksznis's relationship with the Town.[3]

On appeal, Ruksznis argues that the district court erred in finding the pertinent policy language unambiguous as applied to his circumstances. He reiterates his contention that his status as an independent contractor places him outside the scope of the policies' exclusions for "employment-related" activity.[4]

---

[3] The district court adopted the magistrate judge's recommended decision.

[4] He also argues that the "Government Errors and Omissions" exclusion does not bar his slander claim as the slander at issue pertained to Burgess's personal opinion of Ruksznis's job performance. We do not address the applicability of the "Government Errors and Omissions" exclusion because our holding on the "employment-related" exclusion resolves the case.

Our review of a district court's grant of summary judgment is de novo.  See Johnson v. Univ. of P.R., 714 F.3d 48, 52 (1st Cir. 2013).  In conducting our "fresh look" at the record, we view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor.  Gerald v. Univ. of P.R., 707 F.3d 7, 16 (1st Cir. 2013).  Summary judgment is appropriate only if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); Gerald, 707 F.3d at 16.

The sole issue before us is whether the judgment obtained by Ruksznis against Burgess is excluded from the indemnity coverage of either of the two policies issued by Argonaut. The answer turns on whether the exclusions in the policies for "employment" or "employment-related" practices are ambiguous in their applicability to the acts taken by the Town against Ruksznis, who arguably has the status of an independent contractor rather than an employee.

**A.   Legal Principles**

We apply Maine law in this diversity action. Elliott v. S.D. Warren Co., 134 F.3d 1, 5 (1st Cir. 1998). Under Maine law, whether a policy term is ambiguous is a question of law. Royal Ins. Co. v. Pinette, 756 A.2d 520, 523 (Me. 2000). "As long as language in an insurance policy, read in context, has a plain and generally accepted meaning, that language is free from ambiguity." Med. Mut.

<u>Ins. Co. of Me.</u> v. <u>Indian Harbor Ins. Co.</u>, 583 F.3d 57, 62 (1st Cir. 2009). We will find ambiguity if an ordinary person would not understand that the policy affords coverage for the particular claim at issue or if the language is susceptible to different reasonable interpretations. <u>Travelers Indem. Co.</u> v. <u>Bryant</u>, 38 A.3d 1267, 1269 (Me. 2012). Under Maine law, language of an insurance contract is construed according to its plain meaning. <u>Id.</u> at 1270. When a word in an insurance policy is undefined, Maine courts look to its ordinary meaning as appearing in dictionaries. <u>Middlesex Mut. Assurance Co.</u> v. <u>Fish</u>, 738 F. Supp. 2d 124, 137-38 (D. Me. 2010). Ambiguity, if found, is resolved in favor of the insured. <u>Foremost Ins. Co.</u> v. <u>Levesque</u>, 868 A.2d 244, 246 (Me. 2005).

**B.   The Policies**

Ruksznis argues that the slander claim is payable under the CGL as a "personal and advertising injury" and that the civil rights claims fall under the POL policy's "wrongful act" coverage provision. Argonaut concedes for purposes of summary judgment that Burgess was an insured under both policies and that Ruksznis's claims fall within the coverages on which he relies.

Each policy, however, includes an exclusion for "employment-related" practices. The "Employment-Related Practices Exclusion" of the CGL policy reads as follows:

This insurance does not apply to:

> "Personal and advertising injury" to:
> (1) A person arising out of any: . . .
> (c) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination . . .

The POL provision, Exclusion 8, similarly states that the insurance provided by the policy does not apply to "[a]ny 'claim' arising out of employment or application for employment with any insured, or any other employment related policies or practices."[5] This exclusion removes from coverage any claim which either arises out of employment, or arises out of "any other employment related polices or practices."

Ruksznis maintains that references to "employment" connote an employee-employer relationship, and that his claim as an independent contractor is therefore outside the scope of the exclusions. Because his focus is on the word "employment" and the

_____

[5] The text of the exclusion is as follows:

This insurance does not apply to:
1. Any "claim", or any portion of any "claim", alleging "bodily injury", "property damage", "personal injury", "advertising injury" or "employee benefits injury".
. . . .
8. Any "claim" arising out of employment or application for employment with any insured, or any other employment related policies or practices.
K. "Personal injury" means:
. . .
3. Defamation in any form...

Ruksznis concedes that because the policy's definition of personal injury includes "defamation in any form," the POL's exclusion denies coverage for his slander claim.

-8-

term "employment-related," both of which appear in each exclusion, we must similarly focus our analysis.

## 1. The Plain Language and Ordinary Meaning of Employment

In the absence of definitions of "employment" and "employment-related" in the insurance contract, we consider dictionary definitions. Fed. Ins. Co. v. Raytheon Co., 426 F.3d 491, 498-99 (1st Cir. 2005). "Employment" is defined as "the state of being employed; employ; service." The Random House Dictionary of the English Language 638 (2d ed. 1987). The definition of "employ" is "to hire or engage the services . . . provide employment for; have or keep in one's service." Id. "Employment" encompasses a number of arrangements between two parties in which one party performs services or duties for another. See, e.g., American Heritage Dictionary 586 (4th ed. 2000) (defining "employ" to mean "to engage the services of; put to work," and "employment" to mean "the act of employing," "the state of being employed," and "[t]he work in which one is engaged; occupation"); Webster's II New Riverside University Dictionary 429 (1994) (same); The American Heritage Dictionary 450 (2d col. ed. 1985) (same).

Despite the breadth of this definition, Ruksznis argues that "employment" encompasses only work performed for the Town by one who meets the formal requirements of an employee rather than an independent contractor. To buttress this argument, Ruksznis cites

three Maine Supreme Judicial Court cases, two[6] of which deal with the definition of employment in the context of collecting unemployment benefits and the third of which defines the distinction between an independent contractor and an employee for a workers' compensation claim.[7] Ruksznis insists that his employment relationship with the Town meets the standard applicable to an independent contractor, as articulated in these cases.

We will assume for purposes of our analysis that he is an independent contractor. Nonetheless, the distinction between an employee and an independent contractor, critical in the context of collecting unemployment benefits and workers' compensation, is immaterial in the instant case. As the district court held, "although the ordinary person unschooled in the law or in insurance appreciates that there is a distinction between being an employee and an independent contractor, the ordinary person also appreciates that either status is a form of employment." Ruksznis v. Argonaut Ins. Co., 2013 WL 6063379, at *7 (D. Me. Nov. 18, 2013). The broad dictionary definition of employment ("the act of employing"; "engag[ing]" the services" of someone) supports this understanding.

_____

[6] Vector Mktg. Corp. v. Me. Unemployment Ins. Comm'n, 610 A.2d 272, 273 (Me. 1992); Ham v. Me. Emp't Sec. Comm'n, 216 A.2d 866, 868 (Me. 1966) (defining those outside the scope of "employment" as individuals free from control, who perform services outside the usual course of business for which the service is performed, and who are customarily engaged in an independently established trade).

[7] Pennell v. City of Portland, 125 A. 143 (Me. 1924).

-10-

American Heritage Dictionary 586 (4th ed. 2000); The Random House Dictionary of the English Language 638 (2d ed. 1987).

Ruksznis tries to confound the plain meaning of employment or employment-related with his resort to the statutory framework relating to the responsibilities, appointment, and termination of Town plumbing inspectors. Ruksznis contends that Maine law treats municipal officials differently than municipal employees. In support of his contention, he cites Me. Rev. Stat. tit. 30-A M.R.S.A. § 2601(1) which provides that "municipal officers shall appoint all municipal officials and employees required by general law." (emphasis added). The term "municipal official" is defined as any "elected or appointed member of a municipal government." Me. Rev. Stat. tit. 30-A, § 2001(11) (emphasis added). Because plumbing inspectors are "appointed for a term of one year or more," Ruksznis concludes that plumbing inspectors are municipal officials and not employees. Me. Rev. Stat. tit. 30-A, § 4221(1) (2011).[8] In Ruksznis's view, because plumbing inspectors are not employees, they therefore are not employed by or in an employment relationship with the Town within

---

[8] Maine law provides that municipal officers of a municipality shall appoint all municipal officials required by general law and may remove those officials for cause, after notice and hearing. Me. Rev. Stat. tit. 30-A, § 2601(1) (2011). Municipal officers of a town are statutorily empowered to "appoint one or more inspectors of plumbing," who "are appointed for a term of one year or more." Me. Rev. Stat. tit. 30-A, § 4221(1) (2011).

-11-

the meaning of the policies, or, at least, there is ambiguity on that point.

This argument suffers from the same infirmity as Ruksznis's independent contractor argument. We will again assume Ruksznis is correct that he is a municipal official. Nonetheless, the ordinary meaning of "employment" encompasses Ruksznis's relationship with the Town. As previously stated, the definition of "employ" is "to hire or engage the services" of someone. The Random House Dictionary of the English Language 638 (2d ed. 1987). During each of his successive one-year appointments as the Town's plumbing inspector, the Town engaged Ruksznis's services. From 1993 until 2010, he was employed by the Town and performed his duties as a municipal official for the Town as part of that employment.

## 2. Context

Ruksznis further argues that because not all of the practices listed in the CGL exclusion and the POL exclusion apply to independent contractors, the exclusions are inapplicable to him, or at least they are ambiguous in their application. The CGL policy provides that coverage does not apply to "personal and advertising injury" arising out of the following:

> Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person.

Claiming that independent contractors are not demoted, reassigned, or disciplined, he argues that the "exclusion cannot, as a matter of law, reach an independent contracting relationship."

Ruksznis cites no statutory or case law to support this all or nothing logic. The language of the exclusion states "employment-related practices. . . such as." This language provides examples of possible actions by the Town that might have an impact on a person performing services for the Town. That this person might be defamed by the Town, but could never be demoted, reassigned or disciplined, does not affect the applicability of the employment-related exclusion.

Ruksznis similarly argues that the POL policy exclusion relates to "claims arising out of employment or application for employment." Since an independent contractor does not apply for employment, a dubious proposition of appellant's that we will accept only for the sake of argument, the exclusion does not apply to independent contractors. This all or nothing logic suffers from the same infirmity as the version above. That an independent contractor might be defamed by the Town only while providing services to the Town does not make the employment exclusion inapplicable. The language of the exclusion includes claims "arising out of employment." Burgess's slander was a claim arising out of Ruksznis's performance of his plumbing inspector office. It

was therefore unambiguously an employment-related claim subject to the employment-related practices exclusion.[9]

## III.

Ruksznis's judgment against Burgess arose from an employment-related dispute. The CGL and POL policies both unambiguously exclude coverage for claims arising from employment-related practices. Hence, we affirm the district court's order granting Argonaut's motion for summary judgment.

So ordered.

---

[9] Ruksznis cites four cases to support the proposition that the "employment-related" practices exclusion is ambiguous, none of which apply Maine law and all of which are distinguishable. In neither North American Building Maintenance, Inc. v. Fireman's Fund Insurance Co. 40 Cal. Rptr. 3d 468, 470 (Cal Ct. App. 2006), nor Career Sys. Dev. Corp. v. Am. Home Assur. Co., No. C. 10-2679 BZ, 2011 WL 4344578 (N.D. Cal. Sept. 14, 2011), did the court consider whether the work of an independent contractor was a type of "employment" and, consequently, neither case is relevant. Nor is Ruksznis's reliance on Nat'l Union Fire Ins. Co v. Starplex Corp., 188 P.3d 332 (Or. Ct. App. 2008) helpful as the employment-related practices exclusion did not apply. Finally, the court's holding in Clinical Research Inst. of S. Oregon, P.C. v. Kemper Ins. Companies, 84 P.3d 147, 150 (Or. Ct. App. 2004) was limited to whether the exclusion applied to former employees and is therefore equally inapplicable.